## Jull's Estate.

Argued October 10, 1933.   Before FRAZER, C. J., SIMP-
SON, KEPHART, SCHAFFER, MAXEY and DREW, JJ.

*T. F. Ryan,* of *Bialas, Ryan, Irons & McIntyre,* for appellant.

*Maynard Teall,* with him *Reed, Smith, Shaw & Mc-
Clay,* for appellee.

OPINION BY MR. JUSTICE SIMPSON, November 27, 1933:
From the confused and confusing record in this case,
appellant asks us to reverse the court below for dismiss-

ing his claim to recover a $150,000 broker's commission from decedent's estate. There is no error.

It appears that decedent was an officer of a Pennsylvania corporation, and owned about thirty per cent of its stock. For reasons of their own, the stockholders concluded that a refinancing of the corporation was advisable, and so informed the corporation's attorney. To some extent decedent was the spokesman of all the parties in interest, and, in that capacity, was endeavoring to arrange for the refinancing desired. The attorney introduced appellant to decedent, and the former undertook to procure some satisfactory person to effect the refinancing. The parties in interest desired $2,100,000 net to accomplish their purpose. Appellant said he had parties who would advance $2,300,000, and it was understood that, if he did so, he was to receive for his services the additional $200,000 (later reduced to $150,000), an unstated portion of which was to be in the corporate securities to be issued when the refinancing was accomplished. So far as appears, the person he had in mind never even offered to raise the necessary funds. Subsequently, he produced a man by the name of Love, not as one either able or willing to advance the sum needed, but as one who had financial connections, through which, it was believed, the money could be obtained, provided an audit of the accounts of the corporation showed that its affairs were in as satisfactory a condition as they were supposed to be. The audit never took place, and, so far as appears, Love never did anything further. It is alleged that it was decedent's fault that the audit was not had, but this is a matter of no moment here. So far as appears, it was no part of appellant's contract that such an audit would be permitted. Apparently Love did not wish to disclose who his principals were; certainly he never did disclose their names. Until he did this, and decedent and those interested with him were or should have been satisfied as to the ability, willingness and readiness of those named, they were not required to even con-

sider the production of their books and papers for the purpose of an audit. To have allowed it might have been quite harmful to the existing corporators.

Moreover, as affecting the right to recover, appellant produced no evidence as to the number, character or value of the securities he was to receive in part payment for his services. This was fatal to his claim. Here, as in Butler v. Kemmerer, 218 Pa. 242, the claim was not based upon a quantum meruit but upon an alleged express promise, and here, as there, the exact character or value of that which was to be paid was not fixed or determinable from the evidence. There, as here, recovery was properly denied.

Besides, as the court below pointed out, there was no proof or attempt to prove that Love was ready, able and willing to refinance the corporation. The burden of proof of this was on appellant: Koehler v. Gross, 297 Pa. 376. Indeed, as already stated, Love was not brought forward as a possible refinancier, but as one who "represented" others who might be. As their names were not given, decedent and the others interested in the corporation had no way of ascertaining whether or not they were satisfactory persons, ready, able and willing to produce the money needed; and, since no information upon this point was ever given to those desiring the refinancing, they were not required to proceed further.

Love was a witness at the hearing below, and the utmost that he asserted was that those whom he represented "were ready to undertake the financing of the company on conditions that he stated." That they were also "able" so to do was not alleged, nor was it shown that the "conditions that he stated" had been or then were agreed to by decedent and those associated with him.

From every standpoint, therefore, the claim failed for want of proof of its validity.

The decree of the court below is affirmed, and the appeal is dismissed at the cost of appellant.